DECISION AND JUDGMENT ENTRY
{¶ 1} Deborah and John Lloyd appeal the Jackson County Court of Common Pleas' denial of their motions to dismiss two potential jurors and limitations placed on their counsel's questioning of potential jurors during voir dire. Appellants contend that the two jurors should have been removed for cause because their answers during voir dire demonstrated that they were biased against the Lloyds' case. Appellants also argue that their counsel should have been permitted to ask potential jurors if they had concerns about their own insurance premiums increasing as a result of a verdict rendered in Appellants' favor. We conclude that, even if the court abused its discretion in failing to strike the two jurors and in limiting counsel's voir dire questioning, Appellants have demonstrated no harm as a result of the court's actions. This is so because both of the "biased" jurors were subsequently stricken via peremptory challenges and Appellants do not contend that the jury which rendered the verdict was biased or did not follow the law. Therefore, we affirm the trial court's judgment.
 {¶ 2} In May 2000, a sports utility vehicle driven by Patricia Willis struck the driver's door of a vehicle Deborah Lloyd was driving. Mrs. Lloyd claimed that she suffered injuries to her left hip, lower back, and neck as a result of the collision. Mrs. Lloyd asserted that her medical bills for these injuries totaled $8,358.08. She also sought damages for other economic losses suffered, pain and suffering, and her diminished physical abilities. Mr. Lloyd sought damages for his loss of companionship. Mrs. Willis did not dispute that she was liable for the accident but disagreed with the severity of the injuries Mrs. Lloyd claimed she suffered.
 {¶ 3} In May 2003, the issue of damages was tried to a jury. The jury rendered a verdict in Mrs. Lloyd's favor totaling $6,500.00, but did not award damages to Mr. Lloyd. The court entered judgment based on this verdict and Mr. and Mrs. Lloyd timely appealed and raise the following assignments of error: "First Assignment of Error — The Court abused its discretion when it denied Plaintiff's Motion to Dismiss Potential Juror Ms. Emma Houser for cause after she revealed a bias against the Plaintiff stating that she could not find for the Plaintiff unless injuries rose to a life devastating level. SecondAssignment of Error — The Court abused its discretion when it denied Plaintiff's motion to dismiss potential juror Mr. Steve Abele for cause after he indicated that he would not be able to participate in a verdict for the Plaintiff based on his belief that his insurance rates would raise based on such a verdict.Third Assignment of Error — The Court abused its discretion when, during voir dire, it ordered Plaintiff's counsel to stop asking during voir dire if potential jurors believed that their insurance rates would increase if they found for the Plaintiff."
 {¶ 4} We consider Appellants' first two assignments of error, that the court abused its discretion in refusing to strike Jurors Houser and Abele for cause, together.
 {¶ 5} "[T]he determination of whether a prospective juror should be disqualified for cause is a discretionary function of the trial court. Such determination will not be reversed on appeal absent an abuse of discretion." Berk v. Matthews (1990),53 Ohio St.3d 161, 169, 559 N.E.2d 1301, 1309; see, also, Statev. Smith, 80 Ohio St.3d 89, 1997-Ohio-355, 684 N.E.2d 668. An abuse of discretion involves more than an error of judgment; it connotes an attitude on the part of the court that is unreasonable, unconscionable, or arbitrary. Franklin Cty.Sheriff's Dept. v. State Emp. Relations Bd. (1992),63 Ohio St.3d 498, 506, 589 N.E.2d 24; Wilmington Steel Products, Inc.v. Cleve. Elec. Illum. Co. (1991), 60 Ohio St.3d 120, 122,573 N.E.2d 622. When applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court. In re Jane Doe 1 (1991),57 Ohio St.3d 135, 138, 566 N.E.2d 1181, citing Berk, supra, at 169.
 {¶ 6} R.C. 2313.42 states: "Any person called as a juror for the trial of any cause shall be examined under oath or upon affirmation as to his qualifications. * * * The following are good causes for challenge to any person called as a juror: * * * (J) That he discloses by his answers that he cannot be a fair and impartial juror or will not follow the law as given to him by the court. Each challenge listed in this section shall be considered as a principal challenge, and its validity tried by the court."
 {¶ 7} Appellants assert that the court should have dismissed Mrs. Houser because she stated that she would not find in Appellants' favor unless Mrs. Lloyd suffered life devastating injuries such as loss of an eye or use of a limb. Appellants argue that the court should have dismissed Mr. Abele because he opined that many lawsuits are frivolous and stated that he was concerned that a verdict in Appellants' favor could lead to an increase in his own insurance rates. Appellants assert that neither Mrs. Houser nor Mr. Abele were impartial jurors and, therefore, the court should have stricken both from the jury panel.
 {¶ 8} Appellees argue that Appellants waived their objection as to Mrs. Houser because, when the objection was initially made, the court indicated only that it would deny Appellants' motion to dismiss Juror Houser "at this time." Appellants continued questioning Mrs. Houser following the court's initial ruling but failed to renew their objection. Even assuming Appellants did not waive their objection, Appellees assert that Mrs. Houser stated that she could be fair and impartial and follow the court's instructions. As to Mr. Abele, Appellees argue that he likewise indicated his ability to serve as an unbiased juror and follow the directions given by the court.
 {¶ 9} After a careful review of the transcript, we note that, following the trial court's refusal to strike both Mrs. Houser and Mr. Abele from the jury panel, Appellants used a peremptory challenge to remove each of these potential jurors from the panel. Therefore, neither Mrs. Houser nor Mr. Abele were members of the jury panel that rendered the verdict in Mrs. Lloyd's favor. Even assuming the trial court erred in refusing to remove Mrs. Houser and Mr. Abele,[1] since Appellants were able to utilize their peremptory challenges to eliminate these "biased" jurors from the case, Appellants were not prejudiced by the trial court's actions. See Sowers v. Middletown Hospital (1993),89 Ohio App.3d 572, 582, 626 N.E.2d 968, 975; Wilhoite v. Kast,
Warren App. No. CA2001-01-001, 2001-Ohio-8621. Further, Appellants do not argue that they were denied a fair and impartial jury as a result of Appellants' inability to strike other jurors due to their lack of additional peremptory challenges. Wilhoite, supra. Since Appellants can show no harm as a result of the court's refusal to dismiss Mrs. Houser or Mr. Abele as jurors, we overrule Appellants' first two assigned errors. See R.C. 2309.59.
 {¶ 10} In their third assignment of error, Appellants argue that the court abused its discretion when, during voir dire, it ordered Appellants' counsel to stop asking potential jurors if they believed their insurance rates would increase if they rendered a judgment in Appellants' favor.
 {¶ 11} As the Ohio Supreme Court discussed in Krupp v. Poor
(1970), 24 Ohio St.2d 123, 125, 265 N.E.2d 268, "`the purpose of the examination of a prospective juror upon his voir dire is to determine whether he has both the statutory qualification of a juror and is free from bias or prejudice for or against either litigant.'" Citing Pavilonis v. Valentine (1929),120 Ohio St. 154, paragraph one of the syllabus, 165 N.E. 730. The voir dire examination also serves as "the foundation upon which an intelligent exercise of the litigants' right to peremptory challenge may be made." Id. at 126, citing Pavilonis, supra.
 {¶ 12} Reasonable latitude must be given to counsel during the voir dire examination to achieve this purpose. Id. However, "[t]he questions propounded must be asked in good faith, and this involves a question of fact for determination by the trial judge." Id. The inquiry should not be limited only to those subjects which constitute grounds for the sustaining of a challenge for cause; but, if the questioning extends beyond such subjects, it must be conducted in good faith with the goal of obtaining a fair and impartial jury and "must not go so far beyond the parties and the issues directly involved that it is likely to create a bias, a prejudice, or an unfair attitude toward any litigant." Id., citing Vega v. Evans (1934),128 Ohio St. 535, paragraph two of the syllabus, 191 N.E. 757. The form and manner of presentation of the interrogatories is left to the sound discretion of the trial court. Id.
 {¶ 13} Here, Appellants' counsel asked potential jurors if they had any concerns about their own insurance premiums increasing as a result of a verdict rendered in Appellants' favor. Appellants' counsel pursued this line of questioning after Mr. Abele expressed his concerns about fraudulent lawsuits. Appellees' counsel objected to this question, asserting that it improperly brought the issue of insurance into the case. The court agreed and instructed Appellants' counsel not to ask further questions relating to insurance.
 {¶ 14} While we recognize that the trial court was concerned about improperly injecting the issue of insurance coverage into this case, we believe the court was overly cautious in limiting counsel's voir dire questioning in this area. This is especially so in light of the fact that a potential juror, rather than appellant's counsel, interjected the insurance issue. As the Supreme Court of Ohio previously noted, "[i]t is a matter of common knowledge that automobile owners rather generally carry casualty insurance, and that jurors rather generally own automobiles * * *." Krupp, supra, at 127, citing Pavilonis v.Valentine, supra. Therefore, we believe that the trial court should have allowed counsel to question the jurors as to any concerns they might have about their own insurance premiums.
 {¶ 15} However, as we noted previously, Appellants have not argued that the impaneled jury was biased or did not follow the law. Consequently, even assuming that the trial court abused its discretion by not allowing Appellants' counsel to question potential jurors as to their concerns about their own insurance coverage, we conclude that such error was harmless. See R.C.2309.59. Appellants' third assignment of error is overruled.
 {¶ 16} Having overruled all of Appellants' assigned errors, we affirm the judgment of the trial court.
Judgment Affirmed.
Kline, P.J., concurs in Judgment and Opinion.
Evans, J., concurs in Judgment Only.
[1] While Mrs. Houser originally stated that she did not believe injured individuals should file lawsuits unless their injuries were totally devastating, Mrs. Houser later stated that she would need to hear all of the evidence before making a decision. Mrs. Houser also acknowledged that pain cannot be measured and that she believed an individual should recover out-of-pocket expenses and damages for pain and suffering caused by another individual's negligence. Therefore, we would likely not conclude that the court abused its discretion by refusing to strike Mrs. Houser. However, the court's refusal to remove Mr. Abele is a bit more troubling. Mr. Abele acknowledged he had certain biases against individuals filing lawsuits because he believed many lawsuits were frivolous and he had concerns about increases in his own insurance premiums as a result of these lawsuits. When asked by the court if he believed he could follow the court's instructions, Mr. Abele stated that he could follow the law but his opinions would affect his decisions. When asked if he could do what the law required, Mr. Abele responded that he would "do [his] best." The court accepted this response as sufficient to demonstrate Mr. Abele's lack of bias and ability to follow the law. If we were presiding over the voir dire in this case, we would have further questioned Mr. Abele as to his ability to serve as an unbiased juror or simply stricken Mr. Abele based on his failure to unequivocally state that he could be impartial. However, under the "abuse of discretion" standard, we do not substitute our judgment for that of the trial court and, in any event, need not determine whether the trial court abused its discretion for the reasons stated in the body of this opinion.